# Exhibit 2

IN THE MATTER OF AN ARBITRATION UNDER THE HONG KONG
INTERNATIONAL ARBITRATION CENTRE ADMINISTERED ARBITRATION
RULES 2018

Case Number: HKIAC/A20302

Between:

(1) Blockstream Corporation

(2) Thigmotropism LLC

(3) Adam Back

Claimants

- and –

武汉市芯空科技有限公司
(formerly known as 武汉芯动科技有限公司,
also known as Innosilicon Technology Ltd)

Respondent

FINAL AWARD (MONETARY VALUE OF DAMAGES,
COSTS AND INTEREST)

Dated 16 February 2024

Arbitral Tribunal

Mr. Ing Loong Yang (Presiding Arbitrator)
Mr. Stephen E. Smith (Co-Arbitrator)
Mr. Ernest Yang (Co-Arbitrator)

Seat of Arbitration: Hong Kong

*HKIAC/A20302 - Final Award (Monetary Value of Damages, Costs and Interest)*

1. On 19 December 2023, the Tribunal issued a Partial Final Award (Save as to Monetary Value of Damages and Costs) (hereinafter referred to as "**the Partial Final Award**").

2. In paragraph 303 of the 19 December 2023 Partial Final Award, the Tribunal decided, directed and ordered as follows:

    (a) The Respondent has committed a breach of contract in respect of each of the Agreements;

    (b) In respect of the consequential losses suffered by the Claimants:

    (1) The Respondent do pay to the 1st Claimant the monetary value of 425.98 Bitcoins;

    (2) The Respondent do pay to the 2nd Claimant the monetary value of 1,393.79 Bitcoins;

    (3) The Respondent do pay to the 3rd Claimant the monetary value of 51.84 Bitcoins.

    In respect of the monetary value of the damages, the Tribunal directed the Parties to jointly agree on and submit a figure representing the average daily closing price of Bitcoin during the period 26 May 2018 to 25 May 2021 (both dates inclusive) (hereinafter referred to as "**the Material Period**"), within three weeks of the issuance of this Partial Final Award, for the Tribunal's assessment. If the Parties cannot come to an agreement on the monetary value by the end of the three weeks, the Tribunal shall determine the monetary value after receiving written submissions (within seven days of the three-week deadline) from the Parties citing relevant sources of determining such value.

    (c) Post-award interest at 8% per annum on all sums found due until date of final payment to the Claimants;

    (d) All other claims and counterclaims not covered above be dismissed;

    (e) Costs of this arbitration and legal and other costs to be reserved for further determination after the Tribunal received further submissions from the Parties."

3. On 9 January 2024, the Claimants emailed the Tribunal to inform the Tribunal that they had emailed the Respondent several times since the issuance of the Partial Final Award in an attempt to jointly agree on the requested average closing price of Bitcoin referred to in paragraph 303(b) of the Partial Final Award. The Respondent, however, did not respond to the Claimants' email. The Claimants stated that the figure requested by the Tribunal could be objectively calculated from the daily Bitcoin price history document relied on by both parties in the arbitration. Based on the identical Bitcoin prices set out in Respondent's exhibit R-16 and the Claimants' exhibit C-92[1], the average daily price of Bitcoin during the Material Period is USD13,794.

---

[1] The Bitcoin prices listed in Exhibits R-16 and C-92 are completely identical, as both exhibits were pulled directly from the same Bitcoin Visuals website (https://bitcoinvisuals.com).

*HKIAC/A20302 - Final Award (Monetary Value of Damages, Costs and Interest)*

4. On 9 January 2024, the Tribunal emailed the Parties and invited the Respondent to provide its response to the Claimants' 9 January 2024 email by 6 pm Hong Kong time on 9 January 2024.

5. On 9 January 2024 at around 11.26 am, the Tribunal received an email from Senior Counsel Victor Dawes who led the legal team during the hearing. Mr Dawes informed the Tribunal that he, together with Ms Astina Au and Mr John Chan (i.e. all three barristers representing the Respondent) no longer had instructions to act for the Respondent. Mr Dawes requested that the three of them be taken off the circulation list.

6. On the same day, the Tribunal replied to Mr Dawes and agreed to his request that the barrister team be removed from the circulation list.

7. The Tribunal, separately, wrote to the Parties (in the case of the Respondent, their PRC legal counsel team, comprising Mr Roger Miao and Ms Ye Hui), to request a response from the Respondent.

8. On 10 January 2024, not having heard from the Respondent, the Tribunal wrote to the Parties again, directing that:

    (1) By 6 pm on 16 January 2024 (Hong Kong time), Parties are to make written submissions to the Tribunal on the monetary value of Bitcoin as aforesaid, citing relevant sources of determining such value. The Tribunal notes that the Claimants had made some preliminary observations but would like to receive more detailed submissions, particularly on how the figure of US$13,794 is calculated. The Respondent is, of course, free to make its own submission.

    (2) By 6 pm on 16 January 2024 (Hong Kong time), Parties are to also make written submissions on legal costs, as well as the costs of arbitration, as well as the allocation of costs.

    The Tribunal indicated that after receipt of such submissions, the Tribunal would proceed to make a further Partial Award, which will deal with the monetary value of the Bitcoins awarded to the Claimants, and costs.

9. On 16 January 2024, the Tribunal received submissions from the Parties. The Claimants submitted the following:

    (1) Claimants' Submissions on BTC Price and Costs During the Merits Phase;

    (2) Appendix A to Merits Costs Submission;

    (3) Exhibits R-16 and C-92 (in Excel format);

    (4) Authorities Bundle.

10. The Respondent submitted the following:

    (1) Respondent's Submission on Costs in Relation to the Merits Phase of the Proceedings (hereinafter referred to as "Respondent's Costs Submissions").

3

*HKIAC/A20302 - Final Award (Monetary Value of Damages, Costs and Interest)*

The Claimants' Submissions on the Monetary Value of Bitcoin

11. In the Claimants' submissions, the Claimants referred to their email of 9 January 2024 to the Tribunal in which they submitted that both Claimants and the Respondent relied on and agreed upon the same source for historical daily Bitcoin prices during the course of these proceedings – the Bitcoin Visuals website (https://bitcoinvisuals.com). This website is the record of daily Bitcoin prices from 2010 to the present.

12. The Claimants submitted that the historical daily Bitcoin prices set out in the Respondent's Exhibit R-16 and Claimants' Exhibit C-92 are 100% identical, as both exhibits were pulled from the Bitcoin Visuals website. The Claimants also referred to the Witness Statement of Ao Gang (Alex Ao) made on 9 December 2022 at §13, footnote 1, which reads "See Exhibit R-16, Bitcoin Visual. Bitcoin Price. Data Source: https://bitcoinvisuals.com/market-price."

13. The Claimants submitted that based on the undisputed and identical daily Bitcoin prices set out in Exhibits R-16 and C-92, the average daily Bitcoin price during the Material Period is USD 13,794. The Claimants say that this amount was calculated and confirmed by the Claimants' damages expert, Mr Greig Taylor of AlixPartners adopting the following methodology:

    (a) First, Mr Taylor added up the daily Bitcoin prices from 26 May 2018 to 25 May 2021 (both dates inclusive), which are identically listed in both Exhibit R-16 and C-92 at Excel row numbers 2873 to 3969. The aggregate of these daily prices is a total of USD 15,118,330.

    (b) Next, Mr Taylor added up the number of days over the Material Period. The comes up to 1,096 days.

    (c) Finally, Mr Taylor divided the aggregate daily prices over this period (i.e. USD 15,118,330 by the total number of days during this period (i.e. 1,096), which equals USD 13,794.

14. The Claimants submitted that the above calculation is objective, unassailable and based on the Bitcoin prices relied upon and agreed to by the Parties. Not only was this confirmed by the Respondent's own exhibit, R-16, but the Respondent was advised of but elected not to present a different calculation by the 9 January 2024 deadline set by the Tribunal.

The Claimants' Submissions on Costs

15. The Claimants' submission, in essence, is that as the successful party in this arbitration, they should be awarded –

    (a) The costs particularized in Appendix A to their Costs Submissions (the "Costs Schedule"), which includes (i) the legal fees incurred by the Claimants; and (ii) the various costs incurred by the Claimants, including the full fees of the Tribunal and the HKIAC, the fees paid to the Claimants' damages expert and Hong Kong barristers, and miscellaneous identified disbursements, in the total

*HKIAC/A20302 - Final Award (Monetary Value of Damages, Costs and Interest)*

   aggregate amount of USD 2,798,295.34 covering the period of the merits phase of this proceeding (i.e. 13 August 2022 up to 15 January 2024); and

 (b) Post-award interest on any costs which are awarded to the Claimants at the current Hong Kong judgment rate of 8.875% per annum[2].

16. The Claimants relied on both section 74 of the Arbitration Ordinance (Cap. 609) ("**AO**") and Article 34.1 of the HKIAC Rules 2018 for the proposition that the Tribunal may include in an Award directions with respect to the costs of the arbitral proceedings (including the fees and expenses of the Tribunal) and the apportionment of costs.

17. Under Article 34.3 of the Rules, the Tribunal "*may apportion all or part of the costs of the arbitration referred to in Article 34.1 between the parties if it determines that apportionment is reasonable, taking into account the circumstances of the case.*" Such discretion is to be exercised judicially and in accordance with the Tribunal's general duty to conduct the arbitration fairly and impartially under section 46 of the AO.

18. The "relevant circumstances" include, inter alia, the parties' relative success and the conduct of the parties such as noon-compliance with directions made.

19. The Claimants also submitted that the well-established general practice in Hong Kong is that the successful party will recover arbitration costs from the unsuccessful party, or the principle that is coined "costs follow the event". As authority, they cited Geoffrey Ma (ed.), *Arbitration in Hong Kong: A Practical Guide*, 5th ed. (Sweet and Maxwell, 2022)[3], §14.224, which stated "arbitrators in Hong Kong frequently do adopt the [costs follow the event] rule…as the starting point and consider whether there are circumstances that justify a departure from this."

20. The Claimants further submitted that pursuant to sections 79(1) and 80(2) of the AO, the Tribunal has power to order payment of interest (either simple or compound interest) on any costs awarded for any period (including post-Award interest) up to the date of payment. The appropriate commencement date for the payment of interest may be from "[t]he date on which the costs award is made by the tribunal"[4].

21. Finally, the Claimants referred to section 80(2) of the AO, which provides that interest is payable on costs awarded or ordered by the Tribunal from:

 i. the date of the award or order on costs; or

 ii. the date on which costs ordered are directed to be paid forthwith,

at the judgment rate, except when the award or order on costs otherwise provides.

22. The Claimants rely on Interest on Judgments and Interest Rates, accessed on 16 January 2024 at the Hong Kong Judiciary website (https://www.judiciary.hk/en/court_services_facilities/interest_rate.html) for their submission that the current Hong Kong judgment rate is 8.875% per annum.

---

[2] Exhibit CL-111
[3] Exhibit CL-47
[4] John Choong and Romesh Weeramantry (ed.), *The Hong Kong Arbitration Ordinance Commentary and Annotations*, 2nd ed. (Sweet and Maxwell, 2015) [Exhibit CL-48], §79.33

*HKIAC/A20302 - Final Award (Monetary Value of Damages, Costs and Interest)*

23. Turning to the quantum of costs, the Claimants submitted that the costs in question relate to the Merits Phase of this arbitration. They submitted that Appendix A sets out (pursuant to Article 34.1 of the HKIAC Rules), the following costs:

    (i)   Claimants' legal representatives' costs and expenses incurred from 13 August (being the day after the last day of costs and expenses claimed by Claimants in its Reply Costs Submissions in the Jurisdictional Phase on 15 August 2022, up to 15 January 2024. The Claimants attached Mayer Brown's invoices for this head of claim;

    (ii)  The HKIAC arbitration fees and the Tribunal's fees. The Claimants refer to the HKIAC Statement of Account dated 5 January 2024 for this head of claim;

    (iii) Hong Kong barristers' fees – the Claimants attached the fee notes of Jonathan Chang SC and Cedric Yeung, both of Temple Chambers);

    (iv)  The fees paid to Claimants' damages expert, Mr Greig Taylor of AlixPartners – the Claimants attached AlixPartners' invoices;

    (v)   Hearing expenses including real-time transcription services by Epqi at the evidentiary hearing from 12 to 16 June 2023 as well as hearing room rental and meals during the hearing – the Claimants attached Epiq and HKIAC invoices.

24. In relation to item (ii), the Claimants pointed out that the HKIAC arbitration fees and the Tribunal's fees and expenses in this proceeding total HKD 7,374,475, which were paid in full by the Claimants without any contribution by the Respondent. As the Claimants sought HKD 3,175,650 in HKIAC arbitration fees and Tribunal fees in its Jurisdictional Phase costs submission, the HKIAC arbitration fees and Tribunal fees attributed to the Merits Phase of this proceeding is the difference between HKD 7,374,475 and HKD 3,175,650, which is HKD 4,198,825 (or USD 537,621.64).

25. The total amount of fees and costs claimed by the Claimants, which comes up to USD 2,798,295.34, is set out in a table at the top of Appendix A, which is reproduced below:

| Summary of Total Fees and Costs | |
|---|---|
| **Description** | **Amount (USD)** |
| Mayer Brown fees | $ 1,156,874.04 |
| Mayer Brown expenses | $ 27,830.70 |
| Temple Chambers Counsel fees | $ 256,939.82 (HK $2,006,700) |
| AlixPartners damages expert fees | $ 801,247.02 |
| HKIAC fees, including Arbitrator Fees and Administrative Fees (merits phase only) | $ 537,621.64 (HK $4,198,825) |
| Hearing expenses (transcription by Epiq, hearing room and meals during hearing) | $ 17,782.12 (HK$138,838.35) |
| Total | USD 2,798,295.34 |

26. The Claimants submitted that there was nothing in this case to justify any departure from the "costs follow the event" principle and, to the contrary, the circumstances in

6

the Merits Phase overwhelmingly suggest that the Respondent should be ordered to bear the Claimants' costs in full and with interest.

27. In summary, the Claimants referred to 4 circumstances which are relevant to the Tribunal's consideration.

28. First, the Claimants are clearly the winning party, in that the Tribunal had found in favour of the Claimants in respect of the central issues on both liability and quantum. The only issue that the Tribunal decided against Claimants is Issue 6 (claim for loss of hosting service fee). However, that was a self-contained sub-claim and little time and costs had been spent on it.

29. Second, the Claimants had been conducting this arbitration reasonably and cooperatively throughout, including dutifully complying with the Tribunal's procedural orders and directions on time and paying all deposits for the fees and expenses of HKIAC and the Tribunal.

30. Third, the Respondent had treated this proceeding (and the orders, deadlines and directions of the Tribunal) with some contempt throughout. The Respondent had made multiple last-minute applications for deadline extensions and caused delay to the proceedings. The Respondent also failed to pay any part of the deposit for the fees and expenses of the HKIAC and the Tribunal despite Article 41 of the HKIAC Rules.

31. Fourth, the Respondent had made various meritless, artificial and deceptive allegations in support of its defences on the merits despite clear contemporaneous record.

32. In terms of whether the Claimants' costs are reasonable, the Claimants submitted that section 74(6) of the AO provides that the Tribunal is not obliged to follow the scales and practices adopted by the court on taxation when assessing the amount of costs. Section 74(7)(a) of the AO further provides that the Tribunal must only allow costs that are reasonable having regard to all the circumstances.

33. The Claimants submitted that the amount of legal fees and costs incurred by the Claimants' legal representatives are reasonable in the circumstances of the Merits Phase for the following reasons:

    (a) The Merits Phase covered a period of 16 months, from 13 August 2022 to 15 January 2024;

    (b) The Merits Phase was both lengthy and intensive. The process included requests for and disclosure of documents; 4 rounds of pre-hearing written submissions, witness and expert evidence; several interim applications to the Tribunal; an evidentiary hearing spanning 5 days in which all 7 factual witnesses and 2 expert witnesses gave oral testimony; lengthy opening and closing submissions on merits; and post-award submissions;

    (c) Respondent took issue with nearly every aspect of Claimants' claim on both liability and quantum;

    (d) Respondent raised new allegations which had to be dealt with;

*HKIAC/A20302 - Final Award (Monetary Value of Damages, Costs and Interest)*

    (e)    Respondent's belated application for inspection which resulted in a Case Management Conference on 21 March 2023;

    (f)    The hourly billing rates charged by Mayer Brown's New York and Hong Kong attorneys reflect standard market rates in their respective jurisdictions. The hourly rates range from USD 819.00 for an Associate to USD 1,260 for a Partner;

    (g)    Given the factual and legal complexities, it was important for Claimants' counsel team to devote time and resources, including instructing both Senior and Junior Counsel in Hong Kong.

34. The Claimants submitted that their disbursements are also reasonable and they fall within the type of expenses ordinarily awarded in international arbitration.

The Respondent's Submissions

35. In the Respondent's submissions, it submitted, in a nutshell, that –

    (1)    the Tribunal's findings and analysis in the Partial Final Award regarding the Respondent's liability for breach of the Agreements and the quantum of consequential losses "lack direct evidence". The Respondent said it rejected the Partial Final Award because it "relied on hypothetical calculations and flawed computational logic, leading to serious flaws and procedural irregularities" and the Respondent saw no need to make any submission on the monetary value of Bitcoin;

    (2)    the Respondent refused to bear any costs arising from the merits phase of the arbitration and reserved the right to request that the Claimants bear the Respondent's costs related to the preparation of the proceedings.

36. Section B (§§4-20) of the Respondent's Costs Submissions is concerned with the merits of the Tribunal's Partial Final Award. As the arguments raised by the Respondent in Section B are matters of *res judicata* – having already been decided by the Tribunal in the Partial Final Award – the Tribunal does not see a need to deal with those arguments all over again.

37. Section C of the Respondent's Costs Submissions contains the Respondent's submissions as to why it refused to bear any costs arising from the merits phase of this arbitration:

    (a)    First, the Respondent asserted that it did not breach the Agreements and should not be liable for any claimed damages or bear any legal and arbitration costs therefor.

    (b)    Second, the Respondent rejected the Partial Final Award "due to its serious flaws, computational errors, and procedural irregularities". Consequently, the Respondent saw no need for making submissions on the allocation of arbitration costs and the monetary value of Bitcoin.

(c) Third, even if the Respondent is found liable for some part of consequential damages claimed by the Claimants (denied) based on the analysis of the Tribunal, the Claimants should only be entitled to the possible profits from 5,000 Miners (or another precise number of defective Miners). The proportion of these possible profits from 5,000 Miners (or another precise number of defective Miners) in the overall claimed consequential damages determined through a reasonable computational method should be considered when the Tribunal makes the decision on the allocation of legal and arbitration costs.

The Tribunal's analysis and determinations

38. On the monetary value of the Bitcoin, the Tribunal has considered the methodology explained by the Claimants in their Closing Submissions, as well as the exhibits submitted by the Parties, Exhibits R-16 and C-92. The Tribunal accepts the methodology employed by the Claimants and finds the calculation to be objective and unassailable. It is also backed up by the Parties' agreed evidence in the form of the Bitcoin Visuals website (https://bitcoinvisuals.com), which was also identified in the Witness Statement of Ao Gang (Alex Ao) dated 9 December 2022.

39. Accordingly, the Tribunal determines the average daily closing price of Bitcoin for the period to be USD13,794 for one Bitcoin.

40. Referring back to paragraph 303(b) of the Partial Final Award, the Tribunal had awarded the Claimants consequential losses (in terms of Bitcoin) as follows:

    (1) The Respondent do pay to the 1st Claimant the monetary value of 425.98 Bitcoins;

    (2) The Respondent do pay to the 2nd Claimant the monetary value of 1,393.79 Bitcoins;

    (3) The Respondent do pay to the 3rd Claimant the monetary value of 51.84 Bitcoins.

41. Applying the average daily closing price of USD 13,794 for one Bitcoin for the Material Period, the Tribunal awards the Claimants consequential losses in monetary terms as follows:

    (1) The Respondent do pay to the 1st Claimant the monetary sum of USD 5,875,968.12 [425.98 x USD 13,794];

    (2) The Respondent do pay to the 2nd Claimant the monetary sum of USD 19,225,939.26 [1,393.79 x USD 13,794];

    (3) The Respondent do pay to the 3rd Claimant the monetary sum of USD 715,080.96 [51.84 x US 13,794].

42. On the issue of costs of the arbitration, the Tribunal has carefully reviewed and considered the legal principles and statutory provisions cited by the Claimants, noting that the Respondent made no submissions on this issue and instead reserved its rights to claim costs from the Claimants. Upon careful review, the Tribunal accepts the legal

9

*HKIAC/A20302 - Final Award (Monetary Value of Damages, Costs and Interest)*

        principles cited by the Claimants, which are generally accepted and adopted in international arbitration proceedings.

43.    Similarly, the Tribunal finds that the circumstances cited by the Claimants in its consideration of the issue of awarding and apportioning costs to be relevant to the Tribunal's consideration. In particular, the Tribunal notes that the Claimants had won almost every issue in dispute and the complexity of law and facts in this case.

44.    Having regard to those relevant circumstances, including the fact that the Claimants had won almost all of the issues (save for Issue 6 on the hosting service fee and also the date on which damages are to be quantified[5]), the Tribunal is of the view that the Claimants should be awarded 90% of the costs of arbitration.

45.    As to the quantum of costs, the Tribunal has carefully reviewed the figures put forward by the Claimants. Firstly, the Tribunal agrees that the hourly rates of the Claimants' legal team are in line with those in international arbitrations seated in Hong Kong. Secondly, the Tribunal accepts that the Claimants' barristers' fees are reasonable and in line with the market. Thirdly, the categories and amount of disbursements of the Claimant are also acceptable.

46.    However, the Tribunal notes with some concern the amount being claimed for AlixPartners' damages expert fees of USD 801,247.02. When this amount is considered in the light of Mayer Brown's fees of USD 1,156,874.04, AlixPartners' fees seem to be disproportionately high (about 69% of Mayer Brown's fees). Given that AlixPartners are only an expert witness and had filed only two expert reports in this proceeding, compared to Mayer Brown's role as Counsel, the Tribunal is of the view that the amount claimed for AlixPartners' fee may be unreasonably high. Applying its judgment and discretion, the Tribunal is not prepared to award more than USD 600,000 for AlixPartners' fees. Accordingly, the Tribunal discounts AlixPartners' fees by USD201,247.01 and consistent with the apportionment in the preceding paragraph, will award 90% of that amount only.

47.    The Tribunal hastens to add that it is not interfering with the contractual arrangements between the Claimants and their expert witness. The expert witness is entitled, in accordance with the engagement terms, to charge the client for the work it has performed. The Tribunal is only concerned to ensure that the losing party, i.e. the Respondent, bears the reasonable costs and expenses incurred by the Claimants in line with established principles in international arbitration. In doing so, the Tribunal has the discretion to exercise its best judgment on what constitutes a reasonable fee, having regard to the standards in international arbitration.

48.    With regard to the Tribunal's Fees and Expenses and the HKIAC Registration and Administrative Fees, the Tribunal fixes the foregoing fees as following:

| | Stephen E. Smith | 1,856,441.85 |
|---|---|---|
| Tribunal Fees & Expenses (HKD) | Yang Ing Loong | 3,224,610.70 |
| | Ernest Yang | 1,759,450.00 |

---

[5] The Tribunal was not persuaded by the Claimants' argument that the monetary value of the damages should be based on the price of Bitcoin on the day the Award is issued.

*HKIAC/A20302 - Final Award (Monetary Value of Damages, Costs and Interest)*

|  | Tribunal Secretary Xiaojun Wang | 118,680.00 |
|---|---|---|
|  | Other Tribunal Expenses (including estimated bank charges) | 2,580.00 |
| HKIAC Registration & Administration Fees (HKD) |  | 407,530.00 |
| TOTAL (HKD) |  | 7,369,292.55 |

49. As the Claimants had sought HKD 3,175,650 in HKIAC administrative fees and Tribunal fees in its costs submission in the Jurisdictional Phase, the HKIAC administrative fees and Tribunal fees attributed to the Merits Phase of this proceeding total HKD 4,193,642.55 (HKD 7,369,292.55 minus HKD 3,175,650). The Tribunal notes that the Claimants has deposited with the HKIAC a total of HKD 7,574,240 in this case. The unexpended balance will be refunded in accordance with Article 41.6 of the HKIAC Rules 2018.

50. In the circumstances, the Tribunal rules that the Respondent must bear 90% of the reasonable costs and expenses of the Claimant, computed below:

| **Total fees and costs** | |
|---|---|
| **Description** | **Amount (USD)** |
| Mayer Brown's fees | 1,156,874.04 |
| Mayer Brown's expenses | 27,830.70 |
| Temple Chambers' Counsel fees | 256,939.82 |
| AlixPartners' damages expert fees | 600,000.00 |
| HKIAC fees, including Arbitrator Fees and Administrative Fees (Merits Phase only) | 536,271.43 (i.e., HKD 4,193,642.55) |
| Hearing expenses (transcription by Epiq, hearing room and meals during hearing) | 17,782.12 |
| Total | 2,595,698.11 |
| 90% of total | **2,336,128.30** |

51. With regard to post-Award interest, the Tribunal accepts that it has power to award interest at the rate of 8% (consistent with the interest rate ordered in the Partial Final Award) on the costs and expenses awarded to the Claimants. Interest shall run from the date of the Final Award until full payment is made by the Respondent.

## THE TRIBUNAL'S AWARD

52. In light of the above, the Tribunal **ORDERS AND AWARDS** as follows:

   (a) In respect of the consequential losses suffered by the Claimants (and further to the determination of the monetary value of Bitcoin during the Material Period):

      (1) The Respondent do pay to the 1st Claimant the monetary sum of USD 5,875,968.12;

11

*HKIAC/A20302 - Final Award (Monetary Value of Damages, Costs and Interest)*

      (2)    The Respondent do pay to the 2nd Claimant the monetary sum of USD 19,225,939.26;

      (3)    The Respondent do pay to the 3rd Claimant the monetary sum of USD 715,080.96;

(b)    Costs of this arbitration amounting to USD 2,336,128.30 to be paid by the Respondent to the Claimants;

(c)    Interest on the costs of arbitration at 8% per annum until full payment by the Respondent.

(d)    All other claims and counterclaims be dismissed.

*HKIAC/A20302 - Final Award (Monetary Value of Damages, Costs and Interest)*

Seat of Arbitration: Hong Kong SAR

Dated the     16th day of February 2024.

*[signature]*

**STEPHEN E. SMITH**
**CO-ARBITRATOR**

**ERNEST YANG**
**CO-ARBITRATOR**



**ING LOONG YANG**
**PRESIDING ARBITRATOR**

*HKIAC/A20302 - Final Award (Monetary Value of Damages, Costs and Interest)*

Seat of Arbitration: Hong Kong SAR

Dated the     16th day of February 2024.


**STEPHEN E. SMITH**
**CO-ARBITRATOR**

**ERNEST YANG**
**CO-ARBITRATOR**

**ING LOONG YANG**
**PRESIDING ARBITRATOR**

13