UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————————————x

BLOCKSTREAM CORPORATION,
THIGMOTROPISM LLC, and ADAM
BACK,

                    Petitioners,

    -against-

INNOSILICON TECHNOLOGY LTD,

                    Respondent.

—————————————————————————————x

                                        25-cv-902 (CM)

**DECISION AND ORDER DENYING RESPONDENT'S MOTION TO VACATE THE ARBITRATION AWARD AND DISMISS THE PETITION AND GRANTING THE PETITION TO CONFIRM AND ENFORCE THE ARBITRATION AWARD**

McMahon, J.:

The underlying dispute in this matter concerns the delivery of defective bitcoin miners. Petitioners entered into two sets of contracts for the delivery of those miners.  The counterparty listed on the first set of contracts (the Batch 1 Contracts) was Respondent Innosilicon Technology Ltd., a company registered in China with its physical address in Wuhan, PRC (hereinafter "Innosilicon Wuhan").  The second set of contracts (the Batch 2 Contracts) listed the counterparty as Innosilicon Technology Ltd. – same name – a company registered in Samoa with a post office box address in Samoa (hereinafter "Innosilicon Samoa").  Both sets of contracts called for disputes to be arbitrated pursuant to the Rules of the Hong Kong International Arbitration Centre ("HKIAC").  Those rules provide that disputes over arbitrability are the province of the arbitrator to resolve.

The bitcoin miners delivered pursuant to the Batch 1 Contracts worked fine, but the miners delivered pursuant to the Batch 2 Contracts were defective. Petitioners, who had paid the full purchase price for the miners, commenced an HKIAC arbitration against Innosilicon Wuhan. Respondent's answer to the arbitration demand contained an objection to jurisdiction, insisted that it had not agreed to arbitrate disputes under the Batch 2 Contracts, and asserted that the arbitration should properly be maintained against Innosilicon Samoa (which is apparently a shell corporation). Innosilicon Wuhan further asserted that it had been named as the counterparty on the Batch 1 Contracts in error (a "clerical mistake"), and that the correct counterparty on those contracts should also be Innosilicon Samoa. The parties agreed about very little, but they did agree that the "Seller" referenced in both the Batch 1 and the Batch 2 Contracts had to be the same party.

For a year and a half, the parties litigated the issue of whether Innosilicon Wuhan was a proper respondent in the arbitration before the Hong Kong arbitrator. The arbitrator rejected Innosilicon Wuhan's jurisdictional objection and determined that Innosilicon Wuhan was the actual party in interest on both the Batch 2 and the Batch 1 Contracts. The arbitrator entered a partial award to that effect, accompanied by a 240 page opinion carefully dissecting the parties' factual and legal arguments, on July 5, 2022 (the Partial Award on Jurisdiction, or Partial Award).

Seven months prior to the issuance of the Partial Award, Innosilicon Wuhan – apparently anticipating the possibility that the arbitrator might not find its position persuasive – applied to the Wuhan Intermediate People's Court in the PRC, seeking a ruling that the arbitration clauses in the Batch 2 Contracts did not bind it. While those proceedings were pending, the Partial Award was handed down, and Innosilicon Wuhan asked that the Award be nullified under applicable Chinese law. Again it lost. The Wuhan Court both concluded that the arbitrator had jurisdiction to determine arbitrability and recognized the Partial Award as validly issued.

Thereafter, Innosilicon Wuhan litigated the dispute on the merits before the arbitrator, who entered a Partial Final Award on December 19, 2023, which determined that Innosilicon Wuhan owed Petitioners the monetary value of 1,871.61 bitcoin.  A final award against Innosilicon Wuhan in the total amount of $25,816,988.34 (divided among the three Petitioners in amounts determined by the tribunal) was entered on or about February 23, 2024.  The Final Award was transmitted to counsel for Innosilicon Wuhan by email on that date.  To date no payments have been made on the Final Award.

On January 30, 2025, Blockstream filed the original Petition to Confirm the Arbitration Award. An amended petition was filed on June 24, 2025.  On February 2, 2026, Innosilicon Wuhan filed a Motion to Dismiss the Petition and Vacate the Award. The basis for its motion was lack of jurisdiction on the part of the Tribunal.

The petition is granted. The motion to vacate is denied.

**DISCUSSION**

### A.  The Motion to Vacate is Denied as Untimely

Respondent asserts that the award should be vacated and the Petition dismissed because the Tribunal "exceeded its power" when it determined that Innosilicon Wuhan was bound by the Batch 2 Contracts and so was subject to their arbitration clause.

However, 9 U.S.C. § 12 provides that any motion to vacate an arbitration award must be served on the adverse party or its attorney within three months of the date when the award was filed or delivered. The Second Circuit has announced that there is absolutely no exception to the three-month deadline.  *Dalla-Longa v. Magnetar Capital LLC*, 33 F. 4th 693, 695 (2d Cir. 2022), citing *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984).  Since Respondent's motion to vacate was not made until almost two years after the Final Award was emailed to counsel for

Innosilicon Wuhan, it is untimely and must be denied.  Respondent (after citing some ancient cases that are no longer good law) has conceded as much in its reply brief.  (Dkt. # 25-1 at 6).  I must also note that Respondent's motion also seeks vacatur of the Partial Award, which was issued in 2022 – more than three and one-half years before the motion was made.

Moreover, this court could not vacate the award even if Respondent's motion were timely, because the United States is a secondary jurisdiction where, as here, the Award was issued outside the United States – in this case, in Hong Kong.  Because the United States is a secondary jurisdiction, its courts lack the power to vacate the award; they can only decline to enforce it. *Molecular Dynamics, Ltd. v. Spectrum Dynamics Med. Ltd.*, 143 F.4th 70, 84 (2d Cir. 2025).

For these reasons, the motion to vacate the Final Award and any subsidiary award (including specifically the Partial Award) is DENIED with prejudice.

### B. The Motion to Dismiss the Petition is Denied and the Motion to Confirm the Award is Granted

9 U.S.C. § 207 provides that a court "shall confirm" any arbitration award falling under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards,  9 U.S.C. §207, "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  The parties agree that the Final Award in this case, and all subsidiary awards, fall within the New York Convention.  Therefore, this court must grant Petitioners' motion to confirm the awards unless one of just seven defenses applies.

The defense on which Respondent relies is the defense on which he has lost repeatedly: namely, that the Tribunal lacked jurisdiction over Innosilicon Wuhan, so while the award cannot be vacated, it also cannot be confirmed or enforced.  Specifically, Respondent relies on Article

V(1)(c) of the New York Convention, which provides a defense to confirmation is an award "contains decisions on matters beyond the scope of the submission to arbitration."[1]

This is utter nonsense, for three reasons:

**First,** Innosilicon Wuhan agreed that the Tribunal could decide the issue of arbitrability – specifically, whether it was subject to the arbitration clause and a proper party to the arbitration noticed by Petitioners. It is well settled in the Second Circuit that a party who agrees to arbitrate under rules that delegate questions of arbitrability to the arbitrator "clearly and unmistakably" agrees to such delegation. *Contec Corp., v. Remote Sol. Co.*, 398 F. 3d 205, 208 (2d Cir. 2005). The arbitration clauses in both the Batch 1 and the Batch 2 Contracts provide for arbitration under the Rules of the HKIAC. Those rules expressly empower the arbitrator to decide the issue of arbitrability. Because consent to those rules constitutes "clear and unmistakable" intent to allow the arbitrator to rule on jurisdiction, the cases cited by Respondent – principally *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) – are not apposite here.

**Second,** even if the HKIAC Rules did not delegate arbitrability to the arbitrator, if a party puts the issue of arbitrability to the arbitrator – even over an objection to jurisdiction – that operates as consent to "submit arguments as to the appropriate reach of the arbitrators' jurisdiction over [claims] . . . to the arbitral tribunal." *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F. 4th 144, 147–48 (2d Cir. 2021). Innosilicon Wuhan filed its Jurisdictional Objection before the tribunal, raised arguments, provided evidence – in other words, litigated the issue – and lost. Had it wished to preserve any right it might have had to have a court decide the issue of jurisdiction (and I do not

---

[1] Actually, Respondent relies on 9 U.S.C. § 10(a)(4), which says that an award shall not be confirmed if the arbitrator exceeded his authority. But that provision only applies when an award is sought to be vacated within three months. In any event, because this is an international arbitration, the provisions of the New York Convention control.

believe it had any such right given the HKIAC Rules), it needed to obtain a ruling from a court first – not to litigate the issue before the arbitrator in the first instance, as it did.

*Third,* a court of competent jurisdiction in the country that has primary jurisdiction over the arbitration (China, where the Hong Kong arbitration was held) has already overruled Innosilicon Wuhan's objection to jurisdiction and ruled both that the issue of jurisdiction was properly submitted to the arbitrators and that the Partial Award should be recognized under Chinese law. Indeed, the Wuhan Court ruled that Respondent's argument "that the arbitration agreement involved in the case is not binding on it has no legal basis, and this court does not support it." Ex. 20 at 9; *see also* Ex. 21 and Ex. 22 at 9.[2] This court has no reason not to recognize that judgment, or to rule that Innosilicon Wuhan – having taken its jurisdictional objection to the Chinese court in the first instance – is collaterally estopped from relitigating here the precise question it submitted for adjudication there. Nothing in the record suggests that principles of comity ought not be followed where, as here, the party seeking review is a citizen of the country that issued the original judicial decision. By asking a court in its own country to rule on the jurisdictional question, Respondent acknowledged that the Wuhan Court had jurisdiction to rule on the issue. Recognition that the Wuhan Court has afforded Respondent judicial review of its contention that it never agreed to arbitrate will neither prejudice the rights of any United States citizen nor violate domestic public policy – which strongly favors the enforcement of agreements to arbitrate. *Victrix S.S. Co. S.A. v. Salen Dry Cargo A.B.,* 825 F. 2d 709, 713 (2d Cir. 1987).

This court will not disturb the carefully considered findings of the Tribunal, which ruled on both the jurisdictional and merits issues after taking extensive evidence, holding hearings and

---

[2] Innosilicon Wuhan brought separate proceedings against each of the three Petitioners in this case; hence the three identical citations.

writing lengthy, well-reasoned and definitive decisions.  *Valentino S.p.A. v. Mrinalini Inc.*, 2025 WL 341867 at *2 (2d Cir. Jan. 30, 2025). B y confirming and enforcing the award this court will carry out the public policy of the United States, which favors enforcement of arbitration awards that, like this one, are based on a careful evaluation of the evidence by the arbitral tribunal.

### Conclusion

The petition to confirm the award is GRANTED and Respondent's motion is DENIED in all respects.

This constitutes the decision and order of the court.  It is a written decision.

The Clerk of Court is respectfully directed to enter judgment for Petitioners GRANTING the petition, to remove the motion at Docket Number 19 from the court's list of open motions, and to close the case.

Dated: May 26, 2026
        New York, New York

_____
                U.S.D.J.

BY ECF TO ALL COUNSEL